UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDY OLMSTED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FOUNDATION PARTNERS GROUP, LLC, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-01547-MCE-DMC<br><br>(Related Cases) |
| GENE PAUL NELSON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FOUNDATION PARTNERS GROUP, LLC, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-01738-MCE-DMC<br><br>**MEMORANDUM AND ORDER** |

　　　　These related cases stem from a February 12, 2021, after-hours work function allegedly hosted by Defendant Andy Lopez, an Area Sales Director for Defendant Foundation Partners Group, LLC ("FPG"), a business providing funeral, cemetery and cremation services throughout California. Plaintiff Brandy Olmsted ("Olmsted"), a Family Services Advisor working under Lopez, claims she was sexually assaulted after being plied with alcohol by Lopez at that function. In addition, Plaintiff Gene Paul Nelson

("Mr. Nelson"), another FPG employee, asserts he was terminated on or about June 23, 2021, after complaining to FPG about Lopez' purported conduct.  Mr. Nelson filed a lawsuit on August 20, 2021, in Sacramento Superior Court.  A week later, on August 27, 2021, an additional action was filed on behalf of Brandy Olmsted by Nelson's counsel in this district.  Moreover, by way of an amended pleading, Mr. Nelson's wife, Nicole Nelson ("Ms. Nelson"), was added as an additional named Plaintiff on grounds that she was subject to associational harassment by FPG and was further subject to various wage and hour violations in the course of her own employment with the company.  Citing diversity of citizenship under 28 U.S.C. § 1332, Defendants removed the Nelson action to this Court on September 24, 2021.

Presently before the Court are Motions to Stay filed in both the Nelson (ECF No. 16) and Olmsted (ECF No. 17) cases on grounds that because Defendant Lopez may face criminal charges in connection with the alleged sexual assault, the civil proceedings against him should be held in abeyance due to concerns of self-incrimination.  Lopez' former employer, FPG, similarly seeks a stay, arguing that it cannot mount a viable defense absent Lopez' full participation.  In addition, the Nelsons have filed a separate Motion to Amend and to Transfer their case (ECF No. 4).

As set forth below, all three Motions are DENIED.[1]

## BACKGROUND

FPG hired Lopez as an Area Sales Director for California in 2019.  In that position he was responsible for sales teams throughout the State.  Plaintiffs describe Lopez as a "big partier" who hosted company parties at restaurants, hotels and bars whenever sales

///
///

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered the Motions submitted on the briefs in accordance with E.D. Local Rule 230(g).

goals were met. Alcohol was typically consumed "to excess" at these events. Nelson First Amended Complaint ("FAC"), ECF No. 1-1, ¶ 13.[2]

On Saturday evening, February 12, 2021, Lopez hosted a company gathering in Chico attended by both Olmsted, Mr. Nelson, and several other male and female sales team employees. Olmsted considered attendance to be mandatory since the event was work-related and included discussion of FPG business. Olmsted Compl., ECF No. 1, ¶ 16. Following dinner, the group reconvened to a bar. Lopez used an FPG credit card to pay charges incurred in excess of $3,000. Nelson FAC, ¶ 14.

Olmsted claims Lopez "continuously served" her with alcohol throughout the evening, the effects of which she found increasingly apparent. Olmsted Compl., ¶ 17. Because she has no recollection of even leaving the dinner and later felt disoriented, Olmsted believes she may have been "drugged." Id. At about 3:30 a.m., she awoke and found herself in Lopez' hotel room with her top removed and Lopez "aggressively fondling" her breasts. Id. at ¶ 19. After Lopez told her he had "been wanting to do this for a long time," Olmsted demanded to be taken home and Lopez ultimately complied. Id. at ¶¶ 19-20.

Several days later, on February 15, 2021, Lopez texted Olmsted at work and demanded he meet with her. When she reluctantly agreed to do so given Lopez' senior position in the company, Olmsted states that Lopez told her that if "she reported anything about the weekend encounter he would deny it and no one would believe her." She claims Lopez also "threatened her job." Id. at ¶ 22. Then, Lopez contacted Olmsted two days later and asked her to assist him in a sales presentation at the same hotel in Chico where she had been assaulted over the weekend. When Olmsted arrived at the room where the presentation was supposed to occur, she claims Lopez closed the door, and tried to unbutton her blouse and kiss her. Olmsted had just managed to push

///

---

[2] Because this Memorandum and Order encompasses motions filed in both related actions, document references will be prefaced by either "Nelson" or "Olmsted" to distinguish between the two cases.

3

1  Lopez away when they were informed that the sales prospect had arrived which
2  apparently prevented anything further from happening.  Id. at ¶¶ 23-24.

3　　　　During a subsequent May 2021 business trip to Chico, Olmstead states that after
4  another work-related dinner, Lopez insisted on showing her a cell phone video clip that
5  showed a woman "laying unconscious [and] motionless on her stomach."  Id. at ¶ 25.
6  Olmsted claims she turned away in disgust when she realized, from the placement of a
7  scar on her buttocks, that she was the individual depicted.  Id. at ¶ 25.  Moreover,
8  according to Mr. Nelson, Lopez also showed him the same clip at about the same time,
9  which Nelson realized depicted both a "naked and motionless" Olmsted and Lopez
10 "laughing [while] inserting his fingers into [Olmsted's] vagina" and "masturbating with
11 both of them naked."  Nelson FAC, ¶ 15; see also Olmsted Compl., ¶ 26.

12　　　　Although Mr. Nelson avers that he "was appalled and disgusted by what he
13 witnessed in the video clip," he did not report the incident until June 2, 2021, nearly three
14 weeks later, when he sent Julie Judge, FPG's Senior Vice President of Human
15 Resources, a detailed four-page email.  Nelson FAC, ¶ 16-17.  According to Ms. Judge,
16 she thereafter conducted an investigation which included interviews with both Lopez and
17 Olmsted.  Judge states that both denied being in a hotel room together at any time and
18 further denied any intimate interaction whatsoever.  Judge Decl., Nelson ECF No. 6-2,
19 ¶ 13.  Moreover, Julie Judge claims that Olmsted maintained the same position during
20 other separate discussions, including discussions that occurred after Lopez and Nelson
21 were no longer employed by FPG.  Id.[3]

22　　　　Ms. Judge states that both Mr. Nelson and Lopez were "involuntarily separated
23 from [FPG] based in part on my investigation findings that they had been abusing their
24 Company credit cards and violating expense policies by charging excessive amounts of
25 alcohol and masking these purchases in various ways to avoid the approval processes."
26 Id. at ¶¶ 14, 16.  She goes on to state that Mr. Nelson was also fired for additional

---

27　　　　[3] In her Complaint, Olmsted accuses Judge of attempting "to force and intimidate [her] into signing
28　　a declaration under penalty that nothing had transpired between her and LOPEZ…"  Olmsted Compl.,
　　　¶ 71.

4

1    reasons, including 1) his admission that he too had taken another intoxicated female
2    employee to his hotel room following the same event when Olmsted was assaulted,
3    allegedly because she was too drunk to remember her address; and 2) because he
4    failed to timely report the incident.  Id. at ¶¶ 12, 14.
5    	Following his termination on or about June 8, 2021, Mr. Nelson sued FPC and
6    Lopez in Sacramento County Superior Court, alleging that he was fired for having
7    reported Lopez' sexual misconduct to FPG.  According to Julie Judge, it was not until
8    July 27, 2021, a week after Mr. Nelson's complaint was filed on August 20, 2021, and a
9    day after Olmsted spoke with Nelson's counsel, that Olmsted told her she had lied about
10   what had in fact transpired between her and Lopez during the evening of February 12,
11   2021.  That same day, Olmsted filed a police report with the Chico Police Department
12   alleging a non-consensual sex crime against Lopez.
13   	 Olmsted left FPC's employment on or about August 6, 2021, claiming that she
14   had been constructively discharged by the unhealthy work environment to which she had
15   been subjected.  Olmsted Compl., ¶ 38.  Olmsted alleges, for example, that Lopez had
16   "acted inappropriately" with at least one other young female employee.  Id. at ¶ 39.
17   	Although Plaintiffs' counsel, Mark Velez, initially filed suit on Mr. Nelson's behalf in
18   Sacramento Superior Court, when Velez commenced litigation for Olmsted six days
19   later, on August 26, 2021, he did so in the Northern District despite the fact that the
20   complaint alleged that Olmsted resided in Butte County and that the operative events
21   underlying her case also occurred in Butte County.  See Lavaroni Decl., Nelson ECF
22   No. 6-1, Ex. 2.  The Northern District rejected Olmsted's filing that same day, pointing
23   out that Butte County is within the jurisdiction of the Eastern District.  Id. at Ex. 3.  Velez
24   subsequently refiled Olmsted's lawsuit the next day, August 27, 2021, in this District.
25   	In the meantime, on August 2, 2021, attorney Velez amended the state court
26   Nelson Complaint, to add Mr. Nelson's wife, Nicole Nelson, as an additional Plaintiff.
27   Nelson FAC, ECF No. 1-1.  As indicated above, defense counsel then proceeded to
28   ///

1  remove, based on diversity of citizenship, the Nelson Complaint to the Eastern District
2  on September 24, 2021, given its filing in Sacramento County.
3       Once both the Nelson and Olmsted cases were venued in the Eastern District,
4  defense counsel filed a Notice of Related Cases requesting that both matters be
5  assigned to the same district judge because they substantially involve the same parties,
6  are based on same or similar claims, and involve similar questions of fact.  As such,
7  defense counsel argued that relating the cases would save judicial resources and avoid
8  the potential for both duplication of effort and inconsistent rulings.  See Nelson ECF
9  No. 12; Olmsted ECF No. 11.  No opposition was tendered and by Order dated
10 January 7, 2022, the Court related both cases on that basis.  Id. at ECF Nos. 15 and 16.
11      Even though they reside in El Dorado County, the Nelsons now move to amend
12 their complaint to indicate they worked in Monterey County at the time of the retaliation
13 and harassment they allege.  Given that amendment, the Nelsons also argue the case
14 should be transferred to the Northern District.  Defendants oppose, indicating that all
15 significant operative events occurred in Chico, which is within Butte County and under
16 the jurisdiction of the Eastern District.  They point out that 1) the underlying assault on
17 Olmsted occurred in Chico; 2); Lopez showed Mr. Nelson the purported sex video in
18 Chico; 3)  Mr. Nelson's employment duties extended throughout the State of California,
19 including Chico, 4) all key witnesses work or reside in Chico, and 4) the Nelsons by their
20 own admission reside within the Eastern District.  Consequently, according to Plaintiffs,
21 no substantial part of the events occurred within the Northern District, with the possible
22 exception of Nicole Nelson's "add-on" cause of action alleging California Labor Code
23 violations during the course of her own employment with FPC.
24      Also before the Court for adjudication, as indicated above, are motions made by
25 the defense in both the Nelson and Olmsted lawsuits to stay all proceedings until any
26 criminal charges against Defendant Lopez have been resolved.  Both sets of Plaintiffs
27 oppose that Motion, pointing out that no criminal charges against Lopez has been filed
28 despite the fact that Olmsted filed a complaint with the Chico Police Department on

1  July 27, 2021, more than nine months ago.  While defense counsel has submitted a
2  declaration in support of its motion indicating that her contact with the Chico Police
3  Department indicated that investigation was ongoing, with the police "still conferring" with
4  the district attorney's office about whether Lopez would be criminally charged, that
5  contact was made on December 22, 2021, and the Court has not been since apprised
6  that any charges have been initiated during the nearly four and a half months that have
7  transpired since that time.

## STANDARD

### A.   Motion to Amend

Although leave to amend is often liberally afforded, whether to grant or deny amendment is ultimately a matter within the sound discretion of the trial court.  See Swanson v. United States Forest Service, 87 F.3d 339, 343 (9th Cir. 1996).

### B.   Motions to Stay

While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution.  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989); Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980).  The Ninth Circuit has held that "'in the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence.'"  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) (quoting Dresser, 628 F.2d at 1374).  Nevertheless, a court may decide in its discretion to stay civil proceedings "'when the interests of justice seem to require such action.'"  Id. (quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)).

///
///
///

7

When deciding whether to stay civil proceedings, courts should look to "the particular circumstances and competing interests involved in the case." Id. (quoting Molinaro, 889 F.2d at 902). The Ninth Circuit further instructs courts to evaluate "the extent to which the defendant's Fifth Amendment rights are implicated." Id.

Additionally, courts should generally consider the following factors: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." Id. at 324-25 (citing Molinaro, 889 F.2d at 903).[4] "While the extent to which a defendant's Fifth Amendment rights are implicated is a significant factor [in assessing the propriety of a stay], it is only one consideration to be weighed against [these] other five factors." ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014) (citing Keating, 45 F.3d at 326).

It is defendants' burden to persuade the court that a stay is appropriate. Clinton v. Jones, 520 U.S. 681, 708 (1997).

**ANALYSIS**

**A. Motion to Amend**

The Nelson Plaintiffs seek to amend their complaint in order to add a Statement of Venue indicating that while they are residents of El Dorado County, venue is proper in the Northern District under California's Fair Employment and Housing Act ("FEHA") because they worked in Monterey County (see Cal. Govt. Code § 12965(b)), and under 28 U.S.C. § 1391 (b)(2) because "a substantial part of the events giving rise to [their]

---

[4] These five factors will be collectively referred to as the "Molinaro/Keating factors" in this Memorandum and Order.

8

claims occurred in the Northern District." See Proposed Second Amended Complaint, ECF No. 4, p. 1. Plaintiffs also seek to amend their factual averments to indicate they were employed and/or worked in Monterey. Not surprisingly given their request that their operative FAC be amended to state that venue is in fact proper in the Northern District, the Nelsons also request transfer to the Northern District once amendment has been effectuated.

As Defendants point out, however, the Nelson lawsuit was removed to this Court under federal diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1441(a). In accordance with Eastern District Local Rules 101 and 120(c), because the case was instituted in the Sacramento County Superior Court, the case was properly removed here because Sacramento County is within the counties encompassing the Eastern District.

Given its status as a removed case, neither basis for venue urged by the Nelsons apply. Plaintiffs first assert that the provisions of FEHA, which call for venue at the site where the alleged discrimination or retaliation occurred, apply. See Brown v. Superior Court, 37 Cal. 3d 477, 488 (1984). According to Plaintiffs, that location is Monterey County because they worked there, and Plaintiffs accordingly urge the Court to transfer their case to the Northern District. Plaintiffs next assert that irrespective of FEHA, general federal venue provisions apply in any event and mandate that venue be assigned to Monterey County as the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." 28 U.S.C. § 1391(b)(2).

Plaintiffs' venue arguments are wrong because case law establishes that where a case is removed to federal court, the removal statute's venue provisions control. First, with respect to FEHA, motion to transfer venue in federal cases asserting FEHA violations are governed by federal, not state, provisions. See Fenton v. McLane/Suneast, Inc., No. 1:16-cv-01318-BAM, 2017 WL 1356067 *3-4 (E.D. Cal. Jan. 20, 2017). Indeed, Fenton specifically declined to follow Brown, the case relied upon by Plaintiffs as indicated above. Id. at *4. Second, the general federal venue

9

1 statute does not apply because this matter was removed from state court. 28 U.S.C.
2 § 1390(c) explicitly provides that the general statute (§ 1391) "shall not determine the
3 district court to which a civil action pending in a State court may be removed." In that
4 regard, 28 U.S.C. § 1441(a) states that the proper venue for a state action subject to
5 removal is the federal district court "embracing the place where such action is pending."
6 Here, as indicated above, the relevant state court was Sacramento County which means
7 that removal was proper to this district.

8 The Supreme Court held long ago that "on the question of venue, § 1391 has no
9 application [to a] removed action, with venue in such actions instead governed by
10 § 1441. Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953). Significantly, too,
11 the removal venue principles articulated by Polizzi have since been reaffirmed by other
12 courts that faced the issue. See, e.g., PT United Can Co. Ltd. v. Crown Cork & Seal
13 Co., Inc., 138 F.3d 65, 72 (2d Cir. 1998); Peterson v. BMI Refractories, 124 F.3d 1386,
14 1392 (11th Cir. 1997). More recently, a court in this district reaffirmed the same rule.
15 Best Western Int'l., Inc. v. Govan, No. CIV 05-3247-PHX RCB, 2006 WL 2523460 at *5
16 (D. Ariz. Aug. 29, 2006) ("Venue in cases removed from state court are governed by 28
17 U.S.C. § 1441(1), rather than 28 U.S.C. § 1391.").

18 Because the sole purpose of Plaintiffs' Motion to Amend is to add venue
19 allegations that will "transfer venue to the Northern District under 28 U.S.C. § 1391(b)(2)"
20 (Pls.' Mot., 2:27-3:1), or alternatively to transfer venue under FEHA and the Brown
21 decision (Id. at 5:2-5), and since neither of those arguments apply to a removed case
22 like this one, Plaintiffs' Motion to Amend/Transfer lacks any merit and must accordingly
23 be DENIED.[5]

24 ///

---

[5] Plaintiffs' Motion has not been styled as a motion to transfer venue under 28 U.S.C. § 1404(a) for the convenience of the parties or witnesses and accordingly that issue is not before the court. Even if it was, the fact that virtually all the events in question occurred in Chico, and the fact that Mr. Nelson's own job encompassed the Chico territory do not suggest that such an argument would have been effective even had it been advanced. Moreover, the fact that Defendants did not object to relating the Nelson case to the Olmsted action, whose venue in Chico is uncontested, also militates against any transfer under § 1404.

**B.     Motions to Stay**

Defendants move to stay both of these related lawsuits on grounds that because Defendant Lopez "intends to exercise his Fifth Amendment right against self-incrimination pending completion of the criminal investigation and any subsequent criminal proceedings", neither he nor his former employer, Defendant FPC "cannot adequately prepare their defense or meaningfully engage in discovery." Nelson Mot., ECF No. 16, 2:8-11, Olmsted Mot., ECF No. 17-1, 1:11-14.  While FPC, as a corporation, itself lacks any privilege against self-incrimination,[6] FPC nonetheless asserts it "will be irreversibly harmed and prejudiced if Mr. Lopez asserts his Fifth Amendment rights and cannot substantively testify, as his version of the key events is expected to wholly refute [Olmsted's] contentions" with Lopez consequently being "pivotal to the Company defense and materially necessary to its case as a key witness." Olmsted Mot., 1:14-18.  Defendants further claim that if a stay is not issued and civil proceedings continue in the face of potential criminal contribution, they "will risk revealing their respective defense strategies and evidence to criminal prosecutors" outside the bounds of the criminal investigation. Nelson Mem., ECF No. 16-1,., 4:7-8.  In addition, Defendants assert that a stay of these cases will actually promote judicial economy "by avoiding the need to resolve time-consuming discovery motions associated with Mr. Lopez's assertion of his Fifth Amendment rights." Id. at 4:13-14.  Defendants maintain that a stay under these circumstances will actually streamline the discovery process.

In opposition, Plaintiffs point principally to the fact that no criminal charges have yet been filed against Lopez, despite the fact that well over a year has passed since his alleged assault, and even though Plaintiff Olmsted filed her report with the Chico Police Department on July 27, 2021, about ten months ago.  In addition, while Defendants' Motion states that Jim Parrott, a police investigator apparently working on the case,

---

[6] See Braswell v. United States, 487 U.S. 99, 102 (1988) (even if an individual can assert Fifth Amendment privilege given factual overlap between criminal investigation and civil case, corporate defendants are entitled to no such privilege).

11

indicated on December 22, 2021, that "Lopez was still under investigation, and [Parrott] was still conferring with the District Attorney's Office on whether [he] would be criminally charged" (Burnette Decl., Nelson ECF No. 16-3, ¶ 3), there is no indication that anything has happened since then, either.

This Court has previously observed that "[t]he strongest case for deferring civil proceedings . . . is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." In re Zinnel, No. 2:12-cv-00249-MCE, 2013 WL 1284339 at *3 (E.D. Cal. Mar. 28, 2013) (citing Dresser, 628 F.2d at 1375-76). Although there may be circumstances that present a compelling basis for a stay even when an indictment has not been issued (see, e.g., CFTC v. Fin. Tree, No. 2:20-cv-01184-TLN-AC, 2020 WL 6286329 at *4 (E.D. Cal. Oct 27, 2020)), the case for a stay is a far weaker one when no indictment has been returned. Molinaro, 889 F.2d at 903; see also eBay, Inc. v. Digital Point Solutions, Inc., No. C 08-4052 JF (PVT), 2010 WL 702463 at *3 (N.D. Cal. Feb. 25, 2010). ("The potential prejudice to a civil defendant facing a parallel criminal investigation is 'more remote' than it is for an indicted defendant, and the delay to the plaintiff is 'potentially indefinite.'").

It must also be noted that given the lack of a constitutional mandate to stay civil actions in the face of potential criminal proceedings, this Court has great discretion when considering whether to grant a stay. Marshall v. Galvanoni, No. 2:17-cv-00820-KJM-CKD, 2019 WL 2552167 at *3 (E.D. Cal. June 20, 2019) (citing Keating, 45 F.3d at 324). That decision must be made "in light of the particular circumstances and competing interests presented by each case." Molinaro, 889 F.2d at 902.

In Marshall, another judge in this district considered whether to stay a civil securities fraud lawsuit in light of a parallel quasi-criminal investigation by the United States Securities and Exchange Commission ("SEC") involving the same financial investments at issue in the civil case. Like the present case, the individual defendant in Marshall (Daniel Galvanoni) expressed his intent to assert a Fifth Amendment privilege regarding any information sought by the SEC during their investigation, which had not

yet produced any criminal indictment. 2019 WL 2552167 at *1. While Marshall recognized a possible threat of criminal action against Mr. Galvanoni, the decision notes that no evidence was provided to suggest that any such prosecution was imminent. Id. at *3. In the court's view, that threat alone, weighed against the five Molinaro/Keating factors that must be considered in otherwise assessing a stay, did "not tip the scales in defendants' favor" to warrant a stay. Id.

No evidence has been presented here either that any prosecution of Lopez is imminent. Olmsted's police report was filed over a year ago, and four months ago the police investigator indicated that a decision to prosecute had still not been made, and at present there is no suggestion that status has changed. With the passage of time, any decision to prosecute seems less likely, particularly given the conflicting version of events provided by those involved at different junctures. In the Court's view, the extent to which Lopez' Fifth Amendment rights are implicated at this time does not indicate a stay is appropriate.

Analysis of the Molinaro/Keating factors also weighs in Plaintiffs' favor and against a stay. With respect to Plaintiffs' interest in proceeding expeditiously with their litigation, courts have long recognized a plaintiff's interest in having his or her case resolved quickly. ESG Capital, 22 F. Supp. 3d at 1046. The burden upon Defendants from imposing a stay also comes down in favor of Plaintiffs, since even if Lopez' Fifth Amendment rights are implicated, this factor does not support granting a stay unless Defendants can point to compelling reasons suggesting otherwise. Id. Here, the simple fact that Lopez might have to choose between defending this matter and asserting Fifth Amendment rights is not itself sufficient to make that showing. Marshall, 2019 WL 2552167 at *3.

In addition, considerations of judicial efficiency do not weigh in favor of a stay given the fact that this civil case could languish indefinitely in the face of a long-delayed

///

///

1 ///

2 decision on criminal charges that might never be forthcoming.[7]  See General Elec. Co. v.

3 Liang, No. CV 13-08670 DDP (VBKx), 2014 WL 1089264 at *6 (C.D. Cal. Mar. 19, 2014)

4 (Judicial efficiency and the court's interest in clearing its docket typically weigh against

5 granting a stay, particularly where "no criminal indictment has been returned and there is

6 no way to predict when the criminal investigation will end.").  Finally, with respect to

7 public and non-party interests, those interests point to speedy resolution of an already

8 pending case, particularly when criminal charges remain little more than speculation.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Amend Complaint and Transfer Case, filed in the Nelson action (ECF No. 4) is DENIED.  Defendants' Motions to Stay Civil Action Pending Resolution of Criminal Proceedings (Nelson, ECF No. 16, Olmsted, ECF No. 17) are also DENIED.

IT IS SO ORDERED.

Dated:  May 24, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] While Defendants cite authority to the effect that discovery in a civil case is actually "streamlined" by a stay that will permit civil discovery to ultimately proceed unobstructed by concerns about self-incrimination (see SEC v. Alexander, No. 10-CV-04535-LHK, 2010 WL 5388000 at *5 (N.D. Cal. Dec. 22, 2010), the fact that no criminal proceedings have been instituted, and may never be, makes this argument less than compelling in the Court's estimation.  As the Ninth Circuit has observed, any concern about self-incrimination is "far weaker" when no criminal charges have been made.  Molinaro, 889 F.2d at 903.